Next case. Next case is 5-14-00-10-15-C. Taylorville Fire Department v. Workers' Compensation Commission. Counselor, you may proceed. Thank you, Your Honor. Good afternoon. May it please the Court. Counselor, my name is Neal O'Powers, and I represent the Taylorville Fire Department in this matter. This case presents the issue of whether Section 11 of the Illinois Workers' Compensation Act bars recovery for firemen who sustained injuries while participating in a basketball game on the fire department's premises. Stated differently, the issue is whether the application of the Personal Comfort Doctrine and rejection of provisions of Section 11 in finding the claim compensable is contrary to Illinois law. Mr. McSherry, does Section 11 define recreational activities? Section 11 is pretty open-ended. There's no definition in the statute, is there? There really is no definition. As a matter of fact, I believe this Court actually even talked about the fact in prior decisions that there isn't really a definition. And I believe, Justice, I believe you actually even did a definition on recreation as part of the Illinois Department's district case. I'm familiar with the issue. So why is this a recreational activity under the facts of this case, however? Well, the facts of the case are as follows. What we have is a standard fireman, 24 hours on, 48 off, works a period of the day, and then at the end of the day, like about 4.30, it cuts off. He can do as he pleases, although he has to stay, obviously, at the fire department. Job duties have nothing to do, which is, if you look at your case authority that's come down, job duties have nothing to do with recreation. His job duties were fire suppression, medical services, those things. Now, obviously, Taylorville Fire Department encourages physical fitness for the fireman. And therein, I think, lies the issue. And that's where we come to. So what do they have? Well, they have firemen that are going to stay there, they encourage it, and so what they do is they say, all right, here's weights, here's exercise machines, here's an area for playing basketball, you can throw the football around, those types of things. On top of that, two weeks prior to this accident, we have the shift commander who has indicated, let's play some basketball, let's get some team building. So we have firemen who are on call there after hours, and other firemen coming in there to play basketball. They're not required to play. They're not forced to play. Were they encouraged? Didn't the shift commander indicate that he encouraged the activity as some type of a team building morale issue? Correct. Sure, he encouraged it. He was not, the petitioner said, he wasn't forced to play, he didn't have to play. He was not disciplined if he didn't play. Well, if some supervisor in any job, okay, that you look to for direction and guidance is encouraging this activity, isn't that a little different than somebody going off on a frolic of their own? There's a qualitative difference there? There's a difference in terms of encouraging. It's like encouraging someone to be physically fit. I would suggest, you know, I'm going to give you these weights, I'm encouraging you to stay fit. That doesn't mandate, that's not saying you're required to do this. As he testified, his time was his time after hours. He could sit and watch television, he could sleep, he could eat. He did not have to do this. As a matter of fact, there was a comment, I think, during the cross-examination or redirect about, you know, was he getting harassed by his co-employees about, you know, playing, participating. And he goes, yeah, but it was all in jest and in fun. I didn't have to play. So it wasn't mandated as part of his job. He wasn't reprimanded, and if you look at cases that talk about Section 11, and I think that the principal one you always see is the picnic, where you either go to the picnic or you lose your time or you lose a day or take a vacation day. Now, wasn't he on the job when this happened? He was on call. During his work shift, right? Correct. Okay. And just as an aside, Your Honor, I, anticipating questions today about personal comfort, and I got a little bit nervous, and so I decided to sit down and read a little bit of Professor Larson and his treatise. And I came across the on-call, and I came across, and if you look at my brief, it probably has some flaws in it in terms of personal comfort. Larson does talk about personal comfort doctrine and about recreational activities. And he also talks about on-call employees and the fact that they are giving generous coverage for incidents that occur while they're on call. But Larson also says and refers to states who are limiting liability and coverage for recreational activities, and he cites to Illinois as an example where Illinois chose through Section 11 to limit any liability for recreational activities where it's voluntary, it isn't mandated. Is this on call, but he had to be at the station, right? He had to be at the station. I mean, he's at home, and if he's needed, he gets called and goes to a fire. He was required to be there, and that's why I actually looked at Larson, because I know his status is special. But here's the thing. When I read that provision, that whole concept is dealing with in the course of, and that's what we're dealing with here. We're dealing with the in course of the employment. He's on call. He's in the course of his employment. And Section 11 was, he's there. He's in the time and space. Correct. You're conceding that. I'm conceding that, and what I'm trying to say is that that's the personal comfort doctrine where pretty much anything goes. He's got some latitude. Anything he's doing that's reasonable in the firehouse or whatever. But the state of Illinois, the legislature through Section 11 now said, but if you're engaged in a limited or in a voluntary recreational program activity, you're out. For that. Just for that. So you're talking about voluntary, but I mean, what is a normal, reasonable employee supposed to think when his supervisor says, you know, I want you to stay physically fit. I encourage you to engage in this. You know, that's what I want to see you doing, playing basketball, whatever. Now, you can go over here and sit and watch TV and eat pizza if you want, but what I really want you to do is this. You're not required. Now, what are you supposed to think about your opportunities for advancement, for continuing to keep your job or whatever? I agree. How voluntary is that, really? There wasn't testimony at all that, you know what, if I didn't participate or Joe Schmell didn't participate, and he didn't get the advancement. So I felt compelled. That wasn't the evidence, though. Well, wasn't it the opposite that initially he declined to play because he had his daughter's function to go to and he didn't want to direct the job or something else? That's why I made the comment that there were questions then to him about when he was getting rams, oh, come on, you've got to play, you've got to play. But that wasn't by the supervisor. That was from his co-employees. And that's why he eventually did play was because he was getting heckled by his co-workers? Correct. But the deal was there was further questioning to him, well, were you forced to play? And he goes, no, I wasn't forced to play. It was just good fun. It was a standard boys' locker room talk about you don't want to play, you don't want to get dirty. You want to go do your daughter's thing tonight. No, he said ultimately, I wasn't forced to play. I decided to play. Let me pull out the essence of your argument. Can we agree on some of what I think are undisputed facts? And if we go off track, tell me. The city of Taylorville provided this equipment on site, correct? Correct. Okay. The city of Taylorville, obviously, with the testimony of the commander, knew of this activity, correct? Correct. The shift commander encouraged this activity, correct? That's correct. So you're saying then under the statute that can never, anytime somebody's playing basketball or volleyball, that's a recreational facility and coverage must always be denied? If it's voluntary. If he decides to go out and engage in that. It all turns on voluntariness, whether they encourage him to do it. I think that's what the case file makes it very clear that there's only one thing to look at when we look at this. First of all, do we have a recreational activity? I think here we have basketball, we have a recreational activity, one. But then the second question is, quite simply, is it voluntary or mandatory? Okay. Do you mean to concede that this activity was one contemplated and encouraged and condoned by the city? Because I thought I gathered a distinction that was made in the type of basketball being played. They condoned and encouraged playing a horse or 21 or these non, what they're terming non-contact games. But two-on-two and three-on-three, they didn't because that was contact. So is this activity what you're suggesting was being condoned, including the type of basketball that was being played here? You know, I looked at the record dealing with whether or not the contact activity is a non-contact and whether Taylorville agreed with it or not, and I'll be honest with you, I don't think it really mattered. I think the bottom line was that he was participating in basketball activity. It happened to be a two-on-two game, I believe, or a three-on-three, whatever it was, depending on the players. He chose to do that voluntarily. Did he do it because it's good for fitness? Absolutely. Well, what about the argument that this is really, don't exalt form over substance, this is a part of the activities, the normal activities during the shift. It's not really recreational. Can't you argue when the supervisor says, hey, guys, you should play basketball to get exercise, and it's a team-building exercise. So you have this equipment, you have the supervisor telling them they should do this. To me, it morphs into a normal activity on the job, and then you have a problem. Well, but it's not, because he wasn't told to do anything. And his shift, his shift started at 7 in the morning, at 7 to 7. Started at 7, had to start with the trucks and the equipment and doing that. They may have some training, have some other things to work on. He said at 4.30 his day ended, and it was all pretty much, it was that point, it was his time. His time. It's not, you're going to continue on now and you're going to play basketball tonight. That never happened. I suggest you have to look at the context. I can't, in good conscience, find it's an either-or situation. I think statute was designed where somebody is on the clock, okay? And during the lunch hour, they go across the street, they're still on the day shift, and they start doing something that the employer doesn't know about, okay? I think that's a recreational activity. When it's encouraged and the equipment is provided, I think you can argue it's part of the normal daily activities of the firefighters. If it's a part of the normal daily activities, I don't think the voluntariness, it turns on voluntariness. If you're saying it's voluntary because nobody said, look, you're going to get fired if you don't do this, I don't think the law requires that for finding a claimant's favor, that he's threatened to play basketball. But I'm looking at the record, and he was not told that he had to play. Nobody's going to tell him that. Well, then why would they tell someone, as an example, to go to the picnic, or you have to go to the party? What's the distinction between, well, I'm suggesting that you engage in physical fitness, and that becomes you have to do this, and if you don't, what? I mean, there's no choice. And if somebody references, we never disciplined them if they didn't do it, where is the compulsion? Where's the mandatory nature? Because this statute says if you voluntarily participate, and he admitted it was voluntary, then it applies. But you missed the recreational component. Is this really a personal recreation, or is this part of the normal activities there in Taylorville? Well, he's out there playing basketball too long, too. I mean, is that personal? Does he like basketball? Well, that helps him be physically fit. You can make the argument that a firefighter should be physically fit, shouldn't he? That's correct. But also, maybe he loves basketball. We don't know that, but we do know that he did not say he wanted to do it. Now, wait a minute. First of all, we keep talking about physical fitness here, but there was another component, this team building. The what? Team building. Yes, the team building. Okay. Then you say, well, he said I wasn't forced to, but we have a record here that's made of taunting, et cetera, that sort of stuff. So, I mean, is he really volunteering, or is he really being coerced by the environment that is being created there with this alleged recreation team building and you have all the equipment there? He's doing the team building, and I believe that the case law is pretty clear that obviously there's going to be a benefit to the fire department by encouraging physical fitness, right? There's going to be a benefit to the fire department to team building, and the court has said, and that doesn't play a role in this under Section 11. I mean, that's really the essence of this. They decided that for these particular activities, they were going to limit coverage under the statute. What case law says that? What case says that? All the cases have pretty much discussed about this is limited. If the employer encourages the activity as part of the work environment, that's not the second sentence. I forgot which case it was which talks about that to the extent there's a benefit that comes out just to the employer, but that doesn't matter. The fact is, is it mandatory versus voluntary? Okay. So, you have a bright line ruling. If there's a basketball court, weights, anything there, and the employer doesn't mandate it, it's automatically a recreational activity, and under no circumstances can the employee recover. You seem to be saying that, but you don't want to admit that that's your position. No, I think what it comes down to is we follow the line of reasoning that if you're being encouraged to do something or it's suggested that you play the game, and now the ruling is, well, that's, in effect, mandatory. You're being forced to do it. That bright line is gone. Now it becomes very gray, and quite honestly, then, what do employers do, what do fire departments do, what do police departments do, or whatever? They're going to remove those facilities. I tell you. And now you're going to have physical fitness. To go back to Justice Stewart's question, you know, you have to look at the real world. You've got the ship supervisor and other people there suggesting, pressuring him into doing this, okay? That's a little different. What they all had to do was they didn't have to put the equipment there to begin with, and if they did, I think the critical component, in my opinion, is the commander encouraging them to do this. They can put stuff out there, but their commander shouldn't be encouraging them to engage in an activity by which they could be injured and then say, aha, this is recreational. We suggested and pressured him into doing this, but he shouldn't have done it because it's voluntary. Is that really fair? Your Honor, you're making the assumption that encouragement is coercion. Encouraging someone to do something doesn't make it that you're forced to do it. It could be, but that's not the evidence. Your time has been up for a while. I'm sorry. Thank you very much. Good afternoon, Your Honors. Leslie Collins on behalf of Mr. Campbell. Do you really want to take the basketball court away and the weightlifting away from the classifier? No, and I look at these Section 11 cases that are all cited, and to me, this case is so distinguishable because my guy, he's at his place of employment. He's not on call. He is on the clock. He's on the clock. He's being paid. And I know his testimony is that his day was ended. His specific, basically he did everything on his checklist, and now it's his time. He is not on call. If they're in the middle of that basketball game and that alarm goes off, they've got to go answer that call. He's not free to leave the premises. That's true during the day when he's changing the fire. You're right. You have us convinced. He's had his shift. I don't think Mr. Bishardi is arguing he wasn't at work on his shift. This is something we're obviously all struggling with because usually when we see these Section 11 arguments, it is a company picnic or a dinner or something separate from what I'll call normal work hours because he was there during his normal work hours. Is there an argument that the intent of the legislature at the time this legislation was passed was to not be paying people when they get hurt off their normal time at something they didn't have to go to, playing volleyball at the beach at a picnic or something? This isn't that case. Right. And I think Section 11 was created for those. I mean, you have your company-sponsored bowling teams and your softball leagues. Off the premises. That's what Section 11 is for. And I think fully in this case, I mean, we've got the Eagle Discount case. It's been around for 34 years. If it applied to something like this situation, I think it would have come up by now, and there are cases at the commission level that the fact patterns are exactly the same as my case, and I don't know, for whatever reason they weren't brought here, but I mean. Well, the legislature could have defined recreational activities. They could have said that it excludes anything, whether it's on the job site or not. I agree. And they didn't say that, did they? I agree. They never even said recreational activities, did they? Excuse me? They never even said recreational activities, did they? They said voluntary recreational programs. Yeah, yeah, and that was a scene, because I said, to me, I think if you say voluntary recreational program, in my mind, that is an organized event off the employer's premises. I mean, like I said, with this, I mean, this is, you know, clearly, you know, we're here, and like I said, my argument is, you know, they're team building. They were encouraged to do this. Is that a program? I don't think it's a program, no. I mean, I don't think that there's no evidence to suggest they had a schedule as to who's playing when. I mean, I, you know, to me, it's not a, you know, it's not an organized event. It was probably, you know, calling up and saying, hey, you guys want to come play? Management, it seems to me, didn't, this is fire chief management, I think so, right? Yes. An extension of the municipality. Sure. Executive official, who's the one saying go out there and play. Encouraging them to play. I'm not demanding they play. Encouraging. Team building. Well, obviously, they must have a program. You've got a basketball court set up there. If you have an employer, and part and parcel of the job function is to maintain physical stature of some kind, like the guys that have to pull these big hoses, and the employer has some type of facilities for the maintenance of this physical condition that these employees must maintain, is it any longer a recreational activity, or is it really part and parcel of your employment? I agree with you, and you saying that, I'm thinking, what if these, you know, at the fire department they have as, you know, they do a training activity. Well, they're not really doing their job. They're doing training. So, you know, is that an extension of their job duties? The firehouse is their weight rooms. So what if the guy's lifting weights and drops his weights on his foot? Are we going to say that that's recreational, or are we going to say that that's really part of his employment because he's maintaining his physical condition because he needs it for his employment? As opposed to, you know, somebody who's a lawyer and may have a basketball hoop out behind the office, and two of the lawyers are out there playing, and one gets hurt. You don't have to maintain your physical condition to be a lawyer, but you certainly do to be a fireman. I agree. And so my question is, what do we really mean by recreational activities? Are you doing it only for fun, or are you doing it because your employment demands it? Well, I think in terms of this case, a recreational activity would mean something that you were doing outside of the premises on your own time, not something where you are, you know, on the clock, on the job, at the premises. That's where I think the distinction is in this case, and cases such as firefighters. And I think they, you know, he says that, you know, maybe firefighters are, you know, put in their own special class. Maybe they are. I mean, because, like you said, they are, you know. Well, just as often as established lawyers don't need to be physically put to do their jobs. I would maybe disagree with that, but, you know, I think it's, you know. Let me ask you a one-name question I'll ask Mr. Bushari. No, they don't have to be physically put to do their jobs. That's not exactly true, but we won't go there. Has anybody ever bothered to check a legislative history? Mr. Bushari is saying, well, clearly the legislature changed the law for a purpose. Did anybody look at the legislative history? Usually sometimes we don't find anything. I did not, Your Honor. Okay. Any further questions? No. Thank you. Thank you. Mr. Bushari, did you check the legislative history to support your theory of what it was enacted for that you alluded to earlier? Well, I know that the rule is that when you have plain and ordinary language that the court will, in fact, under the rule of statutory construction, will look to the plain and ordinary language. Now, if you look at Section 11, it talks about a recreational program, but then it says including but not limited to. I don't know what that means to you. That means we're taking in any type of recreational program, but including but not limited to athletic events, picnics and parties. Now, there's other things as well, but let's look at a recreational program. If an employer provides a weight room or provides exercise machines, if they provide a basketball court, if they provide a football, is that not a program for engaging in recreation? It could be a physical fitness as a component of your employment. But that's not the evidence in the case. I agree with you, Your Honor. Well, how is it not a component of the evidence in this case? I mean, basketball has that quality to it. I mean, if you're talking about shooting free throws, playing horse, something of that sort, you know, maybe I buy your argument. But, you know, two on two, three on three, there's the cardiovascular benefit. I mean, we can recognize that there is a fitness quality to this. The record indicates that that was encouraged. This isn't a situation where, you know, the fellows have a dart board up there and the claimant, you know, injures himself playing darts. This is this fellow injuring himself doing something that may have recreational benefits, but also has fitness benefits along the lines of what Justice Hoffman was talking about, where it would be the equivalent of having a weight room, having the, you know, being a calisthenics program perhaps. So why isn't the fitness part of this something that maybe overrides the recreational activity component? But you're, and if I may, what you're doing is you're making the assumption that because fitness is encouraged or because part of the program is to encourage, you know, being active, for some reason that becomes a component of your job as opposed to we're providing these facilities so you stay active and physically fit. It's a good thing. Certainly it is. It's not a requirement of the job. The evidence is you're not working at that point. I can do it my time as I wish. I don't have to engage in that. No, but he was on duty. He was working. He was on duty. He was on duty, but he testified, and this is what's different about firemen. They're still there, but they finish their job at a certain time in terms of what they're required to do with their, if you will, the actual duty. Anthony, the chief, testified that they encouraged exercise and the playing of sports while on duty. Purpose of team building and fitness. Correct. And what I tried to say earlier, his job ended at 430. It was his time, as he said. It was my time after that point. No, his job didn't end. He was still working. That's what he said in terms of his actual jobs for the day. I understand he's on call. Yeah, his mandatory activities. He had to stay. There's no question that he was required to stay, but the problem is that he ended his shift in terms of those duties that he had to do. He had to be there if there was an emergency call, obviously. Now, he can do as he wishes. They encourage fitness, but you can do what you want, and we're not going to reprimand you or discipline you if you don't engage in this. We've provided these things, and if what you're saying today is, well, now it becomes mandatory and that's what this means, you'll have all the fire departments in the state of Illinois rethinking all the municipalities going, I guess you don't. Is there a difference in how this case is decided based on the fact that this is a firefighter and the firefighting program encourages the fitness aspect of it versus if there was a basketball court in some law firm or a Google-type environment where it's much easier to define that as purely recreational? How many employers encourage physical fitness? How many employers actually will say, you know what, instead of taking the elevator up to the courthouse or whatever else, I want you to start taking the stairs? That's encouraging physical fitness. Well, then they don't do it. They don't have to. The same thing here. What's going to happen in every fire department? The chiefs and the supervisors are instructed, don't encourage people to engage in these activities. That's all. If you fell down the stairs coming up here, you'd be falling out of the court. Under the Simmons case, we would. Yes. Thank you. I appreciate it. Thank you, Counsel Balls. This matter has been taken into advisement. This position shall issue.